**BLANKROME**

**MEMO ENDORSED**

1271 Avenue of the Americas | New York, NY 10020
blankrome.com

Phone:  212-885-5348
Fax:    917-332-3858
Email:  lwilgus@blankrome.com

October 14, 2020

By ECF

Hon. Kenneth M. Karas, U.S.D.J.
United States District Court
Southern District of New York
300 Quarropas Street
White Plains, New York 10601-4150

> Re:  In re Specialist and Other Vessel Owner Limitation Actions
>      16-cv-4643 (KMK)(PED); Related Cases: 16-cv-5010; 16-cv-7001

Dear Judge Karas:

We represent Tappan Zee Constructors LLC ("TZC") and write to move this Court for a protective order requiring Weeks Marine Inc. ("Weeks") to file confidential documents under seal pursuant to Paragraph IX of Your Honor's Individual Rules and Paragraph 9 of the June 27, 2017 Stipulation and Order of Confidentiality (the "Confidentiality Order"). *See* ECF 184 in docket 16-cv-4643.

By way of background, on October 6, 2020, counsel for Weeks notified undersigned counsel that it would be using certain documents which TZC marked Confidential (the "Confidential Documents") as exhibits to the sanctions motion Weeks intends to file on October 16, 2020.

TZC reviewed the Confidential Documents, which are extensive, and responded on October 9, 2020. TZC informed Weeks' counsel that all of the documents identified have been designated Confidential because they contain non-public information referencing: (1) personal data; (2) proprietary information related to scheduling, costs, and other trade secrets in connection with TZC's method for building the bridge; and/or (3) are subject to SSI[1] protections. As a result, TZC informed Weeks' counsel that it intends to file a letter motion seeking a protective order to have the documents filed under seal, in accordance with Paragraph 9 of the Confidentiality Order. TZC asked Weeks' counsel to advise whether Weeks consents to TZC's request to have the documents filed under seal. Weeks refused to consent.

---

[1] Sensitive Security Information.

153175.06501/123947743v.1

**BLANKROME**

October 14, 2020
Page 2

For the reasons set forth below, TZC respectfully requests that this Court enter a protective order requiring Weeks to file these Confidential Documents under seal.

## ARGUMENT

### A. Legal Standard

"The notion that the public should have access to the proceedings and documents of courts is integral to our system of government." *United States v. Erie County*, 763 F.3d 235, 238–39 (2d Cir. 2014). "Indeed, the common law right of public access to judicial documents is said to predate even the Constitution itself." *Id*. at 239. The First Amendment to the U.S. Constitution "also protects the public's right to have access to judicial documents." *Id*. A party seeking to seal documents submitted to a court bears the burden of showing that sealing is proper. *See DiRussa v. Dean Witter Reynolds Inc*., 121 F.3d 818, 826 (2d Cir. 1997).

### 1. Common Law Right of Access

The Second Circuit has articulated a three-step process for determining whether documents should be sealed in light of the common law right of access. "Before any such common law right can attach . . . a court must first conclude that the documents at issue are indeed 'judicial documents.'" *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119 (2d Cir. 2006). Not every paper filed with the court is a judicial document subject to the right of public access. *United States v. Amodeo (Amodeo I),* 44 F.3d 141, 145 (2d Cir. 1995) (stating that "the mere filing of a paper or document with the court is insufficient to render that paper a judicial document"); *see also United States v. Amodeo (Amodeo II)*, 71 F.3d 1044, 1049 (2d Cir. 1995) (noting that "the temptation to leave no stone unturned in the search for evidence material to a judicial proceeding turns up a vast amount of not only irrelevant but also unreliable material"); *Avocent Redmond Corp. v. Raritan Ams., Inc.*, No. 10-cv-6100, 2012 WL 3114855, at *15, 2012 U.S. Dist. LEXIS 107801, at *41 (S.D.N.Y. July 31, 2012) ("Certain submissions directly affect adjudication, while others are irrelevant."). To constitute a judicial document, "the item filed must be relevant to the performance of the judicial function and useful in the judicial process." *Amodeo I*, 44 F.3d at 145.

Second, after determining that the documents are judicial documents and that the "common law presumption of access attaches," the court must "determine the weight of that presumption." *Lugosch*, 435 F.3d at 119. According to the Second Circuit, the weight to be given the presumption of access must be governed by the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts. Generally, the information will fall somewhere on a continuum from matters that directly affect an adjudication to matters that come within a court's purview solely to insure their irrelevance. *Amodeo II*, 71 F.3d at 1049. When a document plays a role in a court's adjudication of litigants' substantive rights—a function that is "at the heart of Article III"—the presumption is strong, but "[a]s one moves along the continuum, the weight of the presumption declines." *Id*. Courts must exercise judgment to determine the weight to be accorded to "statements or documents in the middle of the continuum," and that "judgment can be informed in part by tradition." *Id*. at 1049–

BLANKROME

October 14, 2020
Page 3

50. For example, when "documents are usually filed with the court and are generally available, the weight of the presumption is stronger than where filing with the court is unusual or is generally under seal." *Id*. at 1050.

Third, the court must balance any "competing considerations" against the weight of the presumption of access. *Lugosch*, 435 F.3d at 120. "Such countervailing factors include but are not limited to 'the danger of impairing law enforcement or judicial efficiency' and 'the privacy interests of those resisting disclosure.'" *Id*. (*quoting Amodeo II*, 71 F.3d at 1050); *accord Bernstein v. Bernstein Litowitz Berger & Grossmann LLP*, 814 F.3d 132, 143 (2d Cir. 2016). When weighing privacy interests, court should consider "the degree to which the subject matter is traditionally considered private rather than public." *Amodeo II*, 71 F.3d at 1051. Courts should also assess the "nature and degree of injury," paying heed to "the sensitivity of the information and the subject" but also to "how the person seeking access intends to use the information." *Id*. at 1051 (explaining that "[c]ommercial competitors seeking an advantage over rivals need not be indulged in the name of monitoring the courts").

2. **First Amendment Right of Access**

The First Amendment right of access stems from the qualified right of the public and the press "to attend judicial proceedings and to access certain judicial documents." *Lugosch*, 435 F.3d at 120 (*quoting Hartford Courant Co. v. Pellegrino*, 380 F.3d 83, 91 (2d Cir. 2004)). Once a court concludes that there is a qualified First Amendment right of access to the judicial documents at issue, it may only seal the documents "if specific, on the record findings are made demonstrating the closure is essential to preserve higher values and is narrowly tailored to serve that interest." *Id*. (*quoting In re N.Y. Times Co*., 828 F.2d 110, 116 (2d Cir. 1987)). "Broad and general findings by the trial court . . . are not sufficient to justify closure." *Id*. (*quoting In re N.Y. Times Co*., 828 F.2d at 116). Examples of "higher values" may include law enforcement interests, the privacy of innocent third parties, *Amodeo II*, 71 F.3d at 1050, and the attorney client privilege, *Lugosch*, 435 F.3d at 125.

Courts commonly find that documents that contain "trade secrets, confidential research and development information, marketing plans, revenue information, pricing information, and the like" satisfy the sealing standard given the important privacy interests at stake. *See, e.g., Hypnotic Hats, Ltd. v. Wintermantel Enters, LLC*, 335 F. Supp. 3d 566, 600 (S.D.N.Y. 2018) (internal quotation marks omitted); *cf. Arar v. Ashcroft*, 585 F.3d 559, 610 (2d Cir. 2009) (listing types of matters where the presumption of openness is overcome, including those involving "trade secrets"); *In re New York Times Co*., 577 F.3d 401, 410 n.4 (2d Cir. 2009) ("When litigation requires disclosure of trade secrets, the court may disclose certain materials only to the attorneys involved."); *Playtex Prod., LLC v. Munchkin, Inc*., No. 14-cv-1308, 2016 U.S. Dist. LEXIS 42261, at *41 (S.D.N.Y. Mar. 29, 2016). (placing under seal documents referencing "sales and costs information, presentations, merger discussions, and competitive analyses and product testing"); *see Travelers Indem. Co. v. Excalibur Reins. Corp*., No. 11-cv-1209, 2013 WL 4012772, at *5, 2013 U.S. Dist. LEXIS 110400, at *22 (D. Conn. Aug. 5, 2013) (allowing redaction of "specific portions of documents revealing sensitive business information," including "confidential proprietary

**BLANKROME**

October 14, 2020
Page 4

information, documents and client data"); *GoSMiLE, Inc. v. Dr. Jonathan Levine, D.M.D. P.C.*, 769 F. Supp. 2d 630, 649-50 (S.D.N.Y. 2011) (finding that material concerning the defendants' marketing strategies, product development, costs and budgeting" contain "highly proprietary material" and therefore may remain under seal).

### B. Application

Weeks intends to use the Confidential Documents in connection with its sanctions motion. Because that motion requires the Court's adjudication of a dispute, the documents are "relevant to the performance of the judicial function and useful in the judicial process." *Amodeo I*, 44 F.3d at 145. Therefore, there is a presumption that the Confidential Documents are judicial documents that trigger the common law and First Amendment rights to public access.

That presumption, however, is to be weighed against any applicable countervailing interest of the party seeking to prevent public disclosure of the documents. Here, as set forth in the October 14, 2020 Declaration of Adam Downs, the Confidential Documents consist of many thousands of pages of TZC's proprietary commercial information, including Daily Work and Progress Meeting Notes, Schedule Updates, Time Impact Analysis reports setting forth delays to the project and projected costs for those delays, various letters and dispute submission correspondence between TZC and NYSTA, among other confidential records—whose disclosure would harm TZC's competitive position as these documents contain confidential information related to TZC's costs, schedules and methods for constructing the bridge.

In addition, as this Court is well-aware, the new Tappan Zee bridge was designed and built by TZC in accordance with a contract between TZC and NYSTA. Certain documents, including photographs of certain sections of the bridge, contain information designated SSI. SSI is governed by Title 49 of the Code of Federal Regulations (CFR), parts 15 and 1520. SSI is information obtained in the conduct of security activities whose public disclosure would, in the judgment of specified government agencies, harm transportation security, be an unwarranted invasion of privacy, or reveal trade secrets or privileged or confidential information.

It is clear the privacy interests of TZC overcome any presumptions of open access to the subject documents and information in connection with the sanctions motion. On a "private" versus "public" scale, the proprietary information at issue plainly falls on the "private" side. *See Amodeo II*, 71 F.3d at 1051 (in addressing privacy concerns, courts should examine the "degree to which the subject matter is traditionally private rather than public.") In fact, the only entities that might have an interest in obtaining TZC's proprietary information relating to its methods and costs for building the bridge are its competitors who might seek to utilize the information to their advantage. It is well settled that a district court may order sealing where the litigation requires the disclosure of trade secrets or proprietary commercial information. *Avocent Redmond Corp. v. Raritan Americas, Inc.*, No. 10 Civ. 6100 (PKC), 2012 WL 3114855, at *15-*16 (S.D.N.Y., July 31, 2012) (*citing In re New York Times Co.*, 577 F.3d at 410 n. 4). TZC's asserted confidentiality interest is sufficiently strong to overcome the presumption of access.

**BLANKROME**

October 14, 2020
Page 5

      Finally, as Your Honor will see, Weeks seeks to use a voluminous number of pages of Confidential Documents as exhibits to its motion. TZC has attempted to review each page in order to narrowly tailor its request for a protective order; however, due to the large amount of documents at issue and the time constraints in which this letter motion was required to be filed under the Confidentiality Order, TZC respectfully request this Court to seal all of the Confidential Documents. And, to the extent the Court requires a more specific statement related to the confidential nature of each document, TZC asks for the opportunity to provide a supplemental Declaration.

### CONCLUSION

      For the reasons set forth above, TZC respectfully requests that the Court grant its motion and direct Weeks to file, under seal, all of the unredacted versions of the above-listed documents.

      We thank Your Honor for your consideration.

Respectfully submitted,

Blank Rome LLP

/s/ *Lauren B. Wilgus*

William R. Bennett, III
Lauren B. Wilgus

and

Giuliano McDonnell & Perrone, LLP

/s/ *Joseph Perrone*

Joseph J. Perrone

Granted.

Date: October 15, 2020
White Plains, NY

SO ORDERED
KENNETH M. KARAS U.S.D.J.

cc:     All counsel of record via ECF

153175.06501/123947743v.1